**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-21899-CIV-BECERRA/TORRES

ULTRA MARINE EUROPE, S.R.O.,

*Plaintiff*,

v.

ULTRA MARINE WEST, INC.,

*Defendant*.
________________________________________/

***ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT***

This matter is before the Court on Plaintiff Ultra Marine Europe, s.r.o.'s ("Plaintiff" or "UltraMarine Europe") motion for leave to file a Second Amended Complaint, pursuant to Fed. R. Civ. P. 15(a)(2) and Local Rule 15.1. [D.E. 56]. Defendant Ultra Marine West, Inc. ("Defendant" or "UltraMarine West") timely responded [D.E. 64] and Plaintiff timely replied [D.E. 65]. Therefore, the motion is now ripe for disposition.[1] After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Plaintiff's motion for leave to file a Second Amended Complaint is **GRANTED**.

[1] On August 12, 2026, the Honorable Jacqueline Becerra referred the motion for appropriate disposition. [D.E. 66].

## *I. BACKGROUND*

This is a dispute between a Czech company and a Florida corporation over the "Ultra Marine" name and the use of a trademark in connection with the marketing and sale of marine anchors and related products.[2] Plaintiff filed its original Complaint on March 23, 2026, asserting claims under the Lanham Act, the Copyright Act, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). [D.E. 1]. Following a contested motion for preliminary injunction and an evidentiary hearing before the undersigned, Plaintiff filed an Amended Complaint on April 29, 2026, that sought to correct certain typographical errors and add allegations concerning the place of publication of the copyrighted logo. [D.E. 48; D.E. 56 at 2]. Defendant moved to dismiss the Amended Complaint on May 13, 2026, arguing that it amounted to a shotgun pleading in violation of the Court's Rules. [D.E. 49].

On June 30, 2026, ten days before the amendment deadline under the current Scheduling Order, an e-mail exchange took place that gives rise to this motion.[3] A representative of a yacht dealer, Jeff Brown Yachts, purportedly wrote to Jocelyn Weber – who was corresponding from an "ultramarine-anchors.com" address and identified himself as being "from ultra marine" – about an Ultra Marine anchor

---

[2] The Court refers to the parties as they refer to themselves in their briefing. The pending motion to dismiss [D.E. 49] and the preliminary injunction proceedings are addressed in this Order only to the extent they bear on the motion for leave to amend.

[3] The description of the e-mail exchange in this paragraph is drawn from Exhibit H to the proposed Second Amended Complaint [D.E. 56-10] and from the parties' characterizations of that exhibit. Beause the exhibit is attached to the proposed pleading, it is part of the pleading for all purposes. Fed. R. Civ. P. 10(c). Nothing in this Order constitutes a finding as to the truth of any statement in the exchange.

product. [D.E. 56-10 at 5-8]. Defendant's officer, Erkay Yücel, and Defendant's Fort Lauderdale representative, Aaron Goldberg, joined in as part of the e-mail chain. [*Id.* at 2, 4]. In the ensuing exchange, Mr. Yücel wrote to the dealer that he was sorry for "allowing a scam organization to market our products in the USA using the attached declaration and the emails below," urged the dealer to "please stay away from scams," asserted that no company called "Ultra Marine Anchors" exists and that there is no original European manufacturer of the products, and attached an internet search summary describing Ultra Marine North America LLC as "the United-States based operational strategic division of Ultra Marine Anchors (originally a European manufacturer)." [*Id.* at 2, 9].

On July 10, 2026, the Scheduling Order's deadline, Plaintiff filed this motion for leave to file a Second Amended Complaint, attaching clean and redlined versions of the proposed pleading as Local Rule 15.1 requires. [D.E. 56, 56-1, 56-2]. The proposed pleading does three things. It adds a Count V for defamation and defamation *per se* against Defendant and, for the first time, against Mr. Yücel individually. It amends the existing FDUTPA count (Count VI) to allege that the same statements further support that claim against Defendant. And it adds jurisdictional allegations as to Mr. Yücel, together with conforming edits that separate the allegations directed at each defendant. [D.E. 56 at 3; D.E. 56-1 ¶¶ 53, 91-98, 103].

Defendant opposes the amendment on the ground that it would be futile. [D.E. 64]. It also maintains that the proposed amendment still amounts to a shotgun pleading.

## *II. GOVERNING PRINCIPLES*

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings. A party may amend any pleading once as a matter of course within the time the rule allows. Fed. R. Civ. P. 15(a)(1). In all other situations, the amending party must obtain written consent from the opposing party or leave of the court to amend the pleading. Fed. R. Civ. P. 15(a)(2). The rule declares that the court "should freely give leave when justice so requires." *Ibid.* As a general rule, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, it ought to be afforded an opportunity to test his claim on the merits. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Because Plaintiff moved within the deadline set by the Scheduling Order, the "good cause" standard of Rule 16(b)(4) does not apply, and Rule 15(a) alone governs. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Of course, the grant or denial of an opportunity to amend is within the discretion of the district court, but outright refusal to grant the leave without any justifying reason appearing for the denial amounts to an abuse of that discretion as being inconsistent with the spirit of the Federal Rules. *Foman*, 371 U.S. at 182. "Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Espey v. Wainwright*, 734 F.2d

748, 750 (11th Cir. 1984) (quoting *Dussony v. Gulf Coast Invest. Corp.,* 660 F.2d 594, 598 (5th Cir. 1981)); *see also Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Substantial reasons justifying a court's denial of a request for leave to amend include undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by court-approved amendments, undue prejudice to the opposing party, and futility of the amendment. *Bryant*, 252 F.3d at 1163.

As to this latter ground, it is well established that a district court may properly deny leave to amend when an amendment would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 822 (11th Cir. 1999). This determination is akin to a finding that the proposed amendment would not survive a motion to dismiss. *See Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011). The Court therefore asks whether the proposed pleading contains "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), accepting its well-pleaded factual allegations as true and drawing all reasonable inferences in the pleader's favor, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]

---

[4] Defendant also cites *Crawford's Auto Center, Inc. v. State Farm Mut. Automobile Ins. Co.*, 945 F.3d 1150 (11th Cir. 2019), for the proposition that a futility-based denial is reviewed *de novo* and that this Court should therefore apply the Rule 12(b)(6) standard "no more forgiving and no less." [D.E. 64 at 10]. We agree that the Rule 12(b)(6) standard governs. But that standard requires the Court to accept the

Two corollaries follow from the "necessarily fail" formulation. First, a written instrument attached to a pleading is part of the pleading for all purposes, Fed. R. Civ. P. 10(c), and where an exhibit plainly contradicts a pleading's general and conclusory allegations, the exhibit governs. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). But an exhibit that is merely silent on a subject, or that is susceptible of more than one reading, does not contradict anything. In that event the pleader's allegations control.

Second, an affirmative defense supports dismissal at the pleading stage only when the pleading's own allegations, on their face, show that the defense bars recovery. *See Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). A defense that depends on facts outside the pleading, or on a question the defendant itself concedes is unsettled, cannot establish that a claim would necessarily fail.

## *III. ANALYSIS*

The question presented boils down to whether the claims Plaintiff proposes to add are so clearly deficient that they should not be permitted to be filed at all.

---

proposed pleading's well-pleaded allegations as true and to draw reasonable inferences in the pleader's favor; it does not invite the Court to resolve contested questions of fact, or unsettled questions of law, against the pleader on a motion for leave to amend. And as *Crawford's* illustrates, futility is more typically found where a party's pleading was already reviewed under a Rule 12 lens and found to be deficient, following which an amended complaint is filed that "told essentially the same story." *Id.* at 1163 (quoting *Hall*, 367 F.3d at 1263) ("We have already affirmed the dismissal of each of Plaintiffs' claims and now affirm the District Court's ruling that further amendment would have been futile."). We have not gotten close to that stage yet in this case in order to make the type of futility finding that *Crawford's* supports.

Defendant does not contend that Plaintiff delayed, acted in bad faith, or repeatedly failed to cure deficiencies, and it acknowledges that any prejudice is "undeveloped." [D.E. 64 at 11, 24]. Its opposition "rests on futility." [*Id.* at 11]. We take the futility arguments in the order Defendant presents them, beginning with the one on which all the others depend.

### *A. Defendant's Opposition Rests on Futility Alone*

The motion was filed on the Scheduling Order's amendment deadline, less than two weeks after the statements at issue were made. [D.E. 56 at 4]. Defendant agrees that "the underlying emails are recent enough that a diligence objection has little purchase," and that "the mere passage of time, without anything more, is an insufficient reason to deny leave to amend." [D.E. 64 at 11, 24 (quoting *Bryant*, 252 F.3d at 1163)]. It agrees that the motion is procedurally compliant. [*Id.* at 10]. And it agrees that a pure prejudice argument is "undeveloped at this early stage." [*Id.* at 11]. Those concessions are well taken. This is Plaintiff's first substantive amendment; discovery is in its early stages; and trial is ten months away.

The only prejudice Defendant identifies is that granting leave "would moot the fully-briefed motion to dismiss," require the new defendant to be served and to retain counsel, and "reopen case management." [*Id.* at 24]. Some of these concerns may never materialize. But even if they do, none of that is prejudice of the kind Rule 15 contemplates. An amended pleading supersedes the pleading it replaces, *see Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006), so the mooting of a motion directed at the superseded pleading is the ordinary consequence of every amendment, not a reason to deny one. Serving a newly added defendant is

the ordinary consequence of adding one. And Defendant's pending motion attacks only the form of the Amended Complaint, not its substance. So whatever was worth saying about the pleading's structure can be said again about the new one. Defendant's opposition therefore stands or falls on futility.

### ***B. The Proposed Defamation Count Is Not Futile***

Florida law recognizes five elements of a defamation claim: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). A publication is defamatory *per se* if, among other things, it charges that a person has committed an infamous crime or "tends to injure one in his trade or profession." *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953). Defendant agrees that this is the governing framework. [D.E. 64 at 11].

Defendant's futility argument as to Count V has five parts. But Defendant itself describes three of them as something less than independent grounds for denial. The real-party-in-interest argument is offered "candidly as a reinforcing argument, not a standalone basis for outright denial[.]" [D.E. 64 at 15]. The qualified privilege argument is "ordinarily more fact-intensive than the arguments above" and is "not . . . the sole basis for denying leave." [*Id.* at 16]. The opinion argument is presented "candidly as an alternative rather than its lead position, because *Petricca* is not easily distinguished on its own terms[.]" [*Id.* at 17]. And the truth argument, by its own

terms, "does not extend . . . to the 'scam organization' phrase or the shipping-cost comparison[.]" [*Id.* at 18].

What remains, then, is a single question: whether the statements in Exhibit H can plausibly be understood as "of and concerning" Plaintiff. Defendant says they cannot, because they name a different company.

### *1. The Statements Plausibly Concern Plaintiff*

An allegedly defamatory statement must be "of and concerning" the plaintiff. But a defamed person need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the person receiving the communication. *See Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804-05 (Fla. 1st DCA 1997); *see, e.g., McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986). The question is answered from the standpoint of the recipient, and it is ordinarily one for the trier of fact; a court may resolve it as a matter of law only where the communication is incapable of supporting the inference that it referred to the plaintiff. *See Thomas*, 699 So. 2d at 805. Defendant does not dispute that framing. [D.E. 64 at 12]. At the pleading stage, then, the question is only whether the proposed pleading and its exhibits make it plausible that the recipient understood the statements to concern Plaintiff.

For purposes of a Rule 15 motion, they do. First, the recipient did not come to the exchange as a stranger to Plaintiff. He came as a prospective customer of Ultra Marine anchors, corresponding with someone who wrote from an "ultramarine-

anchors.com" address and signed himself "from ultra marine." [D.E. 56-10 at 7-8]. Second, Mr. Yücel's statement was not confined to the limited liability company. He apologized for "allowing a scam organization to market our products in the USA," and he told the customer to "stay away from scams." [*Id.* at 2, 4]. That is a statement about the legitimacy of the products being offered and of whoever stands behind them, not merely about the entity whose name appeared on a Florida corporate filing. Third, Mr. Yücel attached material describing Ultra Marine North America LLC as the U.S. division of "Ultra Marine Anchors (originally a European manufacturer)," and then asserted that no such European manufacturer exists, only a Turkish one. [*Id.* at 2, 9]. A recipient told that the "European manufacturer" behind the products is fictitious would naturally understand the statement to concern the European company that holds itself out as that manufacturer. Fourth, the proposed pleading alleges that Plaintiff owns the Ultra Marine mark, is the source of the Ultra Marine goods, and formed or works with Ultra Marine North America LLC as its affiliate to market those goods in the United States. [D.E. 56-1 ¶ 53]. Without finding whether or not these statements do amount to defamation, for futility purposes we readily find that they are sufficient to raise the prospect of a viable claim. We thus cannot find that they are futile assuming the truth of the allegations.

Of course, whether Plaintiff can prove those allegations is a question for another day. Taken as true, they make it more than plausible that a warning to a customer that the Ultra Marine "organization" is a "scam" was understood to concern

Plaintiff. At least a plausible case can be made for that conclusion. And that is all we need to know in order to adjudicate a motion to amend under Rule 15.

Defendant's principal response is a dilemma. If Plaintiff and the LLC are unrelated, Defendant says, then the statements concern only the LLC; if they are closely related, then the LLC is the real party in interest. [D.E. 64 at 8-9, 14]. Either way, Plaintiff loses. The argument has a certain symmetry, but it rests on an unstated premise: that a single statement can be "of and concerning" only one person. Florida law contains no such rule. The of-and-concerning inquiry asks, as to each plaintiff, whether the recipient could reasonably understand the statement to refer to that plaintiff. A statement can refer to more than one. *See* Restatement (Second) of Torts § 564 (1977) (a defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands it was intended to refer). A publication charging that a manufacturer's products are a fraud, delivered by naming the manufacturer's distributor, does not become unactionable by the manufacturer because the distributor was the one named. Were the rule otherwise, a competitor could disparage a manufacturer with impunity so long as it took care to name only the manufacturer's sales arm. Nothing in Florida's defamation law invites that result.

The authorities Defendant relies on do not suggest otherwise. *Reed* and *Thomas* are group-libel cases. In *Thomas*, hundreds of commercial fishermen sued over a television advertisement about the fishing industry, and the court held that a statement about so large a class could not be understood to refer to each member

individually. 699 So. 2d at 802, 805. In *Reed*, a professional golfer sued over commentary directed at a group of players who had joined a rival tour, and the court held that statements about the group, or that merely displayed the plaintiff's image without more, were not of and concerning him. *Reed v. Chamblee*, No. 3:22-CV-1059-TJC-PDB, 2023 WL 6292578, at *10-14 (M.D. Fla. Sept. 27, 2023). Those cases require extrinsic identifying facts where the publication does not identify the plaintiff at all. Here, the identifying facts are within the four corners of the exhibit: the products, the domain name, the "European manufacturer," and the "organization" marketing "our products."

Thus the Defendant's authorities are not persuasive on a futility measure with which to deny an otherwise merited motion to amend. If Defendant wishes to pursue other Rule 12 arguments, or challenge the substance of the allegations at later pretrial stages of the case, a grant of leave does not impact it. All defenses and legal redress remain available to Defendant. But the issues raised in opposition to the motion to amend are not merited when it comes to futility under Rule 15.

Nor does Florida's alter ego doctrine have anything to do with this motion. Plaintiff does not ask the Court to disregard anyone's corporate separateness or to "borrow" the LLC's claim. [D.E. 64 at 8, 13]. It pleads an injury to its own goodwill as the source of the goods the statements disparaged. That is Plaintiff's own claim, and it stands or falls on whether the statements concerned Plaintiff, not on whether the LLC is Plaintiff's instrumentality.

Defendant's remaining argument on this point is that the "affiliate" allegation is "affirmatively contradicted" by Plaintiff's own exhibits, principally the Distribution Agreement attached as Exhibit D. [*Id.* at 13]. Even at face value, however, that does not make the claim futile; it may make it weak or impeachable, not futile.

Apart from that, the argument asks more of *Griffin Industries* than the case will bear. The Distribution Agreement, on Defendant's own description, addresses Plaintiff's rights to distribute anchors in Europe under an arrangement with a Turkish manufacturer. [*Id.* at 13]. It says nothing about Ultra Marine North America LLC, which did not exist when the agreement was signed, and nothing about who may market the products in the United States today. An exhibit that is silent on a subject cannot contradict an allegation about it. And to the extent Defendant reads the agreement to establish that Plaintiff is a mere distributor rather than the source of the goods, that is the central disputed question in this case, and the parties have briefed it at length in connection with the preliminary injunction motion. A contested characterization of a contract is not the "plain contradiction" that permits a court to disregard a pleading's allegations, and we will not resolve that dispute on a motion for leave to amend.[5]

---

[5] Defendant's own description of the public record illustrates the point. Defendant reports that Ultra Marine North America LLC was formed on March 9, 2026; that its manager and registered agent is Paul Tesar, whom Defendant identifies as one of Plaintiff's witnesses at the preliminary injunction hearing; and that its sole listed member is registered at the same Prague street address Plaintiff uses. [D.E. 64 at 14]. Defendant "does not yet know . . . precisely what relationship this reflects." *Ibid.* Whatever it reflects, it is not the picture of two "legally distinct strangers." *Ibid.* The Court may take judicial notice of the existence of public corporate filings, but it draws

### *2. Plaintiff Is a Real Party in Interest*

Defendant's alternative argument – that if the two companies are related, the LLC rather than Plaintiff is the real party in interest – fares no better, and Defendant does not press it as an independent ground. [D.E. 64 at 15]. Rule 17(a) requires that an action be prosecuted in the name of the party who possesses the substantive right being asserted. Plaintiff asserts its own right: it alleges that the statements injured its own reputation and goodwill as the owner of the mark and the source of the goods. Whether the LLC might also have a claim is not before us. And even if Rule 17 were implicated, the rule forbids dismissal until "a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). A rule that prohibits dismissal is an unlikely source of a finding that a claim would necessarily fail for purposes of a motion to amend. The out-of-circuit shareholder-standing decisions Defendant cites, which it acknowledges are "persuasive rather than binding," [D.E. 64 at 15], address whether a shareholder may sue for a corporation's injury. Plaintiff is not a shareholder suing for someone else's injury. Nor do those cases have much to say about the standard that applies on a Rule 15 motion such as this one.

### *3. Qualified Privilege Is an Affirmative Defense Not Established on the Face of the Pleading*

Florida recognizes a qualified privilege for statements made in good faith to protect a legitimate interest, including a business interest, to a person with a

no factual conclusion from them here beyond observing that they do not contradict the affiliation the proposed pleading alleges.

corresponding interest. *See Nodar v. Galbreath*, 462 So. 2d 803, 809-10 (Fla. 1984). The privilege is qualified: it is lost where the speaker acts with express malice, that is, where the primary motive for the statement is to injure the plaintiff rather than to protect the interest. *See id.* at 806, 811. Whether that was the speaker's primary motive is ordinarily a question of fact. *See id.* at 811–12.

Two things dispose of this argument at the pleading stage. First, it is an affirmative defense, and nothing on the face of the proposed pleading establishes it. To the contrary, the pleading alleges that Mr. Yücel knew the statements were false. [D.E. 56-1 ¶¶ 91-98]. Second, Defendant concedes that the defense "is ordinarily more fact-intensive than the arguments above," that Plaintiff "will likely argue the privilege is unavailable because the communication was motivated by animus," and that Defendant "is prepared to address that argument on a fuller record." [D.E. 64 at 16]. That is a description of a defense to be litigated, not a reason to deny leave.

#### *4. The "Scam Organization" Statements As Opinions*

Florida distinguishes "pure opinion," which is protected, from "mixed opinion," which is not. Pure opinion occurs when the speaker comments on facts that are set forth in the communication itself or are otherwise known to the audience; mixed opinion is based on undisclosed facts, and implies that such facts exist. *See From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981); *Turner v. Wells*, 879 F.3d 1254, 1262-63 (11th Cir. 2018). Whether a statement is fact or opinion is a question of law, answered by considering all the words used and the full context in which the statement was made. *See Turner*, 879 F.3d at 1262-63.

Defendant argues in opposition to the motion to amend that the Court should declare the "scam organization" element of the proposed defamation claim to be futile as a matter of law because it is an opinion, not a statement of fact. We draw no ultimate conclusion on this question because it is, again, not a matter of futility as opposed to another defense that can be raised to the proposed pleading. Defendant can seek to press the issue on a motion to dismiss or summary judgment, but it is not so well grounded and so unassailable that it amounts to futility for purposes of this motion.

And if we did tackle the legal question Defendant raises, we could not do so on this record. The statements at issue were not commentary on a public controversy; they were a competitor's private message to a customer, warning that a specific business is a "scam organization" that markets its products "using the attached declaration." [D.E. 56-10 at 2]. A reader could understand that as an assertion of fact: that the business is fraudulent and that the "declaration" it uses is bogus. Defendant's response is that the e-mails disclosed the facts on which the characterization rested: that no company called "Ultra Marine Anchors" exists, that the products are made in Turkey, and that a shipping quote had been reduced. [D.E. 64 at 17]. But the pure-opinion doctrine protects comment on disclosed facts because the reader is free to evaluate the comment against the facts for himself. It does not protect a conclusion resting on disclosed "facts" that are themselves alleged to be false, and the proposed pleading alleges exactly that as to the assertion that no

European manufacturer of the products exists. A false statement of fact does not become protected because it is offered as the premise for a conclusion.

The case Defendant cites for the disclosed-facts rule, *Fortson v. Colangelo*, 434 F. Supp. 2d 1369 (S.D. Fla. 2006), involved a sports columnist's characterization of a basketball player, decided on summary judgment. That is not this case. We are not at summary judgment with the benefit of a complete record after discovery. We are not even at the pleading stage. We are solely determining whether the proposed defamation claim is viable enough not to be futile. Under that limited lens, Defendant's opinion-versus-fact challenge is premature.

Moreover, Defendant acknowledges that *Petricca v. Saxony Condominium Ass'n*, No. 23-cv-81581-AMC, 2024 WL 3345516 (S.D. Fla. Apr. 15, 2024), which held that an accusation of a "scam" tied to a checkable factual predicate could support defamation *per se*, "is not easily distinguished on its own terms." [D.E. 64 at 17]. A ground the movant itself describes that way cannot establish that a claim would necessarily fail. Again, this is not motion to amend material.

In sum, we draw no conclusion on this challenge to the defamation claim. All viable arguments that can be raised in the litigation remain available to Defendant. We need only find at this point that Defendant's challenge to the merits of this purported defamation claim does not render the proposed amendment futile.

***5. Truth Cannot Be Established on the Face of the Pleading***

The same holds true for Defendant's other merits-based objection to the motion: that truth is a defense. Truth *is* a defense, but that defense is properly

presented as a denial in an answer and supported with evidence at summary judgment or trial. It is plainly a question of fact. Defendant nevertheless argues that one particular statement, that there is no original European manufacturer of the products, should be declared "true" on the face of Plaintiff's own exhibits. [D.E. 64 at 18]. Defendant expressly does not extend that argument to the "scam organization" statements or the shipping-cost comparison. [*Ibid.*]. That limitation is dispositive. A defamation count is not futile if any statement it pleads is actionable, and the gravamen of Count V, the accusation that Plaintiff's operation is a "scam" marketing products by means of a fraudulent declaration, is untouched by the argument. So this segment of Defendant's opposition to the motion has little merit to it.

Even if we tried to tackle it head-on, the argument also fails on its own terms. Under Florida's substantial-truth doctrine, falsity is measured by the "sting" of the statement, not by the literal accuracy of each word. *See Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999). The sting of Mr. Yücel's e-mails is dishonesty, not the geography of production. And the exhibits do not establish even the narrower proposition. The Distribution Agreement reflects a supply arrangement with a Turkish manufacturer that, according to Plaintiff, is more than a decade old and has been terminated; the proposed pleading alleges that Plaintiff is the source of the goods and that their production is now secured in the Czech Republic. Whether Plaintiff was a distributor or is the brand owner and source of the goods is the question at the center of this litigation. And as we have just held in the Order denying the preliminary injunction, there is much competing evidence that will be presented

by both sides on this question. It should not be resolved by treating one side's reading of a contract with a non-party as an undisputed fact for purposes of futility under Rule 15.

### *6. Other Challenges to the Claims Are Premature*

Defendant argues that Count V, "properly understood," is a claim of trade libel or commercial disparagement rather than defamation, and that it therefore fails for want of special damages pleaded with the particularity Rule 9(g) requires. [D.E. 64 at 20–21]. Defendant should present that argument, if it can under Rule 12, in response to the amended complaint. But this characterization surely has no place in the Court's futility analysis to simply determine whether an amended complaint should be permitted.

In any event, if we did tackle it now, Defendant concedes that whether Rule 9(g) applies to a defamation *per se* claim is the subject of "a genuine, acknowledged intra-district split rather than settled law," and that authority within this Circuit holds the rule inapplicable to such a claim. [D.E. 64 at 21 (citing *Leavitt v. Cole*, 291 F. Supp. 2d 1338 (M.D. Fla. 2003), and *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330 (M.D. Fla. 2006))]. That concession spells the end of the argument at least for purposes of a Rule 15 motion. A claim cannot "necessarily fail," *St. Charles Foods*, 198 F.3d at 822, under a pleading rule the defendant admits may not apply to it. Nothing more need be said of this argument now. Again, Defendant is free to press it in an appropriate avenue for relief, not here.

The same holds true for the pleading of the FDUTPA claim. Defendant argues that the amendment to Count VI is barred by Florida's single-publication rule, under which "[i]f the defamation count fails, the other counts based on the same publication must fail as well." *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1320-21 (S.D. Fla. 2020) (quoting *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002)). The rule prevents a plaintiff from evading the limits on defamation claims by "simply renaming the cause of action and repleading the same facts." *Ibid.*

Again, this challenge to the viability of the FDUTPA claim is not ripe for futility analysis. It is better left for Rule 12 or 56 arguments when the predicates inherent in the argument are ripe. We, again, do not tackle the dispute at this stage of the litigation.

And even if we did, Defendant's argument is not as compelling as it makes it out to be. In the first place, we do not necessarily agree that the defamation claim at this stage is not plausible, in whole or in part. So the premise of the rule Defendant focuses on is absent. The second is that Count VI does not appear to be a count "based on the same publication." The FDUTPA claim was pleaded in the original Complaint and the Amended Complaint, months before the June 30 e-mails existed, and it seems to rest on the conduct underlying Plaintiff's Lanham Act claims. [D.E. 1 ¶¶ 87–92; D.E. 48 ¶¶ 87–92]. Defendant's original motion to dismiss did not even challenge that count. [D.E. 49]. Hence Defendant's new reading of the claim may prove to be incorrect.

Further, the amendment adds the June 30 statements as further support for an existing, independently grounded claim; it does not necessarily repackage a failed defamation claim under a new heading. "The mere fact that conduct gives rise to more than one type of claim does not prevent it from being an FDUTPA violation." *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1305 (S.D. Fla. 2008) (quoting *Army Aviation Heritage Found. & Museum, Inc. v. Buis,* 504 F. Supp. 2d 1254, 1262-63 (N.D. Fla. 2007)). *Bongino* itself distinguished *Alvi Armani* on precisely the ground that the plaintiff there alleged conduct independent of the disparaging statements. 477 F. Supp. 3d at 1320-21. That is this case.

The other challenges raised now to the FDUTPA claim are equally meritless for purposes of a motion to amend. They were not raised in Defendant's original motion to dismiss the Amended Complaint, and they are not a basis for denying leave to add allegations to a count Defendant has never challenged.

### *C.* ***<u>The Proposed Allegations Against Mr. Yücel Are Not Futile for Want of Personal Jurisdiction</u>***

Defendant's remaining futility argument is that the proposed pleading does not adequately allege personal jurisdiction over Mr. Yücel, a foreign individual. [D.E. 64 at 22-24]. Again, this issue is premature and not one that can be decided on Rule 15 grounds. Apart from that, the defense of lack of personal jurisdiction is a personal one; it protects an individual liberty interest and, like other such rights, may be waived. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Mr. Yücel has not been served and has not appeared. Defendant's counsel does not purport to speak for him, and Defendant "expressly reserves the right to

raise the full personal jurisdiction defense by motion under Rule 12(b)(2) once the individual has been served." [D.E. 64 at 23-24]. We need not decide whether an existing defendant may invoke a proposed defendant's jurisdictional defense on a motion for leave to amend.

### *D. The Court Declines to Condition Leave on Repleading*

Finally, Defendant asks in the alternative that any leave be conditioned on Plaintiff's filing a pleading that cures the shotgun-pleading defects asserted in its pending motion to dismiss. [D.E. 64 at 24-25]. Defendant acknowledges that a shotgun-pleading defect "is ordinarily remedied by repleader rather than outright denial of leave to amend," [*id.* at 24 (citing *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001))], and Plaintiff represents that the proposed pleading was revised specifically to identify which defendant, and which count, each allegation concerns. Our initial review of the proposed amended complaint shows that to be the case. But in any event we decline to impose a condition on a pleading that no party has yet moved to dismiss. If Defendant believes, after reviewing the Second Amended Complaint as filed, that it still falls within one of the categories of shotgun pleadings identified in *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015), it may say so by motion directed at that pleading. Or it may simply answer the complaint if it can frame a responsive pleading. Again, all rights and defenses that Defendant has in responding to the amended complaint are preserved.

## *IV. CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's motion for leave to file a Second Amended Complaint [D.E. 56] is **GRANTED**. Plaintiff shall file the Second Amended Complaint attached as Exhibit 1 to the motion [D.E. 56-1] as a separate docket entry within **three (3) days** of this Order, and shall promptly effect service on the newly added defendant in accordance with Fed. R. Civ. P. 4.

2. Because the Second Amended Complaint will supersede the Amended Complaint, Defendant's motion to dismiss the Amended Complaint [D.E. 49] is **DENIED AS MOOT**, without prejudice to Defendant's raising any properly preserved argument in response to the Second Amended Complaint.

3. Defendant shall respond to the Second Amended Complaint within the time provided by Fed. R. Civ. P. 15(a)(3).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of September, 2026.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge